**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------X

| | |
|---|---|
| In re | Chapter 13 |
| JUSTO REYES, | Case No. 16-22556 (SHL) (Reyes) |
| In re | |
| | Case No. 16-23514 (SHL) (Jackson) |
| KAREN JACKSON, | |
| Debtors. | |

-------------------------------------------------------X

| | |
|---|---|
| JUSTO REYES and KAREN JACKSON, individually and on behalf of all others similarly situated, | |
| | Adv. No. 19-08248 (SHL) (Reyes) |
| Plaintiffs, | |
| v. | Adv. No. 19-08249 (SHL) (Jackson) |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |

-------------------------------------------------------X

### MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION TO DISMISS

**A P P E A R A N C E S:**

**THE DANN LAW FIRM CO. LPA.**
*Counsel for the Plaintiffs Justo Reyes & Karen Jackson*
372 Kinderkamack Road, Suite 5
Westwood, NJ 07675
  By:   Javier L. Marino
          Marc E. Dann
          Brian D. Flick

**TIRELLI LAW GROUP, LLC.**
*Counsel for the Plaintiffs Justo Reyes & Karen Jackson*
50 Main Street, Suite 1265
White Plains, NY 10606
  By:   Linda M. Tirelli

**ZIMMERMAN LAW OFFICES, P.C.**
*Counsel for the Plaintiffs Justo Reyes & Karen Jackson*
77 West Washington Street, Suite 1220
Chicago, IL 60602
By:   Thomas A. Zimmerman, Jr.
        Mathew C. De Re

**LOCKE LORD LLP**
*Counsel for the Defendant Wells Fargo Bank, N.A.*
Brookfield Place
200 Vesey Street, 20th Floor
New York, NY 10281
By:   Casey B. Howard
        Aileen McTierman

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court in the above-captioned cases are the motions to dismiss of Wells Fargo Bank, N.A. ("Wells Fargo" or the "Defendant") under Federal Rule of Civil Procedure 12(b)(6), which is made applicable to these adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b).[1]  *See* Notice of Motion [ECF No. 19]; Memorandum of Law in Support of Wells Fargo Bank, N.A.'s Motion to Dismiss Plaintiffs' First Amended Complaint [ECF No. 19-1] (the "Motion").  Plaintiffs Justo Reyes and Karen Jackson (collectively, the "Plaintiffs") oppose this motion.  *See* Plaintiffs' Opposition to Motion to Dismiss (the "Opposition") [ECF No. 21].  As the Court finds that each of the Plaintiffs' claims are barred by the applicable statute of limitations, the Court grants the Defendant's motion.

## BACKGROUND

As is the case on a motion to dismiss, the facts of the complaint are taken as true.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  When reviewing a motion to dismiss, the

---

[1] The amended complaints in this case are essentially identical class action lawsuits docketed in the two separate adversary proceedings captioned above: Adv. No. 19-08248 (Reyes) and Adv. No. 19-08249 (Jackson).  As the corresponding motions to dismiss and responsive filings are also essentially identical, the Court will refer simply to the pleadings on the Case Management/Electronic Case Filing ("ECF") docket in Case No. 19-08248.

Court may consider documents that are directly referenced in the complaint, attached as exhibits to the complaint, or relied upon by the plaintiff in bringing the suit. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

**A. The Loan Modification Process**

In 2008, the Federal Government created several programs to provide eligible homeowners with an opportunity to modify the terms of their mortgage to make their mortgages more affordable. Amended Complaint ¶ 14 [ECF No. 16]. Under the applicable guidelines for these programs, mortgage servicers like Wells Fargo evaluate the eligibility of borrowers for loan modifications. *Id.* ¶ 15. Before any final modification, a borrower may first be placed in a Trial Period Plan ("TPP"). *Id.* ¶ 16. If a borrower makes all required trial payments under a TPP and experiences no change relative to the other eligibility requirements, then the borrower should be approved for a permanent loan modification. *Id.* ¶ 17.

In late 2010, Plaintiff Reyes applied to modify his mortgage loan with Wells Fargo. *See id.* ¶ 61. Wells Fargo approved a TPP for Reyes in a letter dated November 10, 2011. *Id.* ¶ 62; Amended Complaint, Ex. B ("Reyes TPP Letter") [ECF No. 16]. The Reyes TPP Letter required Reyes to make three monthly payments in the amount of $3,467.89 starting on December 1, 2011. Amended Complaint ¶ 63; Reyes TPP Letter. Despite Reyes making all three payments as required, the Defendant subsequently denied his permanent loan modification. Amended Complaint ¶ 66. In the denial letter sent to Reyes on July 3, 2012, the Defendant stated that "[t]here are additional liens on your property that prevent us from completing your request for mortgage assistance."[2] Amended Complaint, Ex. E ("Reyes Denial Letter") [ECF No. 16]. In

---

[2] The process of modifying the terms of the mortgage loan creates a risk that the mortgage lender with the loan being modified will lose primacy and become subordinate to other liens on the property. Amended Complaint

3

fact, the Defendant had failed to convince the existing lienholders to subordinate their liens. Amended Complaint ¶ 35. More than six years later in April 2019, the Defendant sent Reyes a letter and a check for $300. Amended Complaint, Ex. G ("2019 Reyes Letter") [ECF No. 16]. In this letter, the Defendant stated that "[w]e should have let you know at the time of trial approval that the [loan] modification might be denied due to title issues even if you paid the trial period payments." *Id.*

The situation was the same for Plaintiff Jackson. In mid-2012, Jackson applied for a loan modification with the Defendant. Amended Complaint ¶ 83. Wells Fargo approved a TPP for Jackson by letter dated July 25, 2012. *Id.* ¶ 84; Amended Complaint, Ex. A ("Jackson TPP Letter") [ECF No. 16]. The Jackson TPP Letter required Jackson to make three monthly payments in the amount of $1,889.81 starting on September 1, 2012. Amended Complaint ¶ 85; Jackson TPP Letter. While Jackson made all payments as required, the Defendant denied her loan modification. Amended Complaint ¶¶ 88–89. In the denial letter sent to Jackson on February 15, 2013, the Defendant stated that "[t]here are additional liens on your property that prevent us from completing your request for mortgage assistance." Amended Complaint, Ex. D ("Jackson Denial Letter") [ECF No. 16]. Once again, the Defendant was unable to convince the existing lienholders to subordinate their liens. Amended Complaint ¶ 35. Some six years later in March 2019, the Defendant sent Plaintiff Jackson a letter and a check for $300. Amended Complaint, Ex. J ("2019 Jackson Letter") [ECF No. 16]. In this letter, the Defendant stated that

---

¶ 19 (noting that this creates a title issue that lowers the economic value of that mortgage); *see also In re Morales*, 506 B.R. 213, 219 (Bankr. S.D.N.Y. 2014) ("Another condition is that the lender must maintain first lien position and the underlying note and mortgage must remain fully enforceable.") (citing U.S. Dep't of the Treasury, Making Home Affordable Program Handbook for Servicers of Non-GSE Mortgages at 128 (ver. 4.3 2013)). To mitigate this risk, mortgage lenders attempt to negotiate with existing lienholders to ensure that the mortgage lender with the loan being modified maintains the same priority after modification. Amended Complaint ¶ 20.

4

"[w]e should have let you know at the time of trial approval that the [loan] modification might be denied due to title issues even if you paid the trial period payments." *Id.*

**B. The Adversary Proceeding**

On April 12, 2019, the Plaintiffs filed these adversary proceedings as a putative class action against the Defendant on behalf of similarly situated individuals (collectively, the "Class Members"). *See* Original Complaint ¶¶ 86–91 [ECF No. 1]; *see also* Amended Complaint ¶¶ 105–10. The proposed Class includes:

> [a]ll loan borrowers in the United States Bankruptcy Court for the Southern District of New York who (1) filed for Chapter 13 Bankruptcy in the Southern District of New York; (2) owed amounts to Wells Fargo, as servicer and/or holder, on debt secured by real property; (3) entered into a TPP with Wells Fargo; (4) whose TPP did not contain an express provision stating that they could be refused a permanent Loan Modification in the event that a subordinate lienholder refused to subordinate its existing lien to their modified mortgage; (5) made all required payments pursuant to the terms of that TPP; and (6) were denied a permanent Loan Modification because a subordinate lienholder refused to subordinate its existing lien to his or her modified mortgage.

Amended Complaint ¶ 105.

The Plaintiffs allege that the Defendant—under the guise of participating in the government-sponsored Home Affordable Modification Program ("HAMP")—misled the Plaintiffs into making additional loan payments by the promise of a permanent loan modification as offered in the TPP Letters. *Id.* ¶¶ 28, 45; Jackson TPP Letter; Reyes TPP Letter. The Plaintiffs contend that the Defendant improperly implied in the Denial Letters that the rejection of Plaintiffs' request for permanent loan modifications resulted solely from the Plaintiffs' own actions. Amended Complaint ¶¶ 38–39; Jackson Denial Letter; Reyes Denial Letter. The Plaintiffs argue that they were only alerted to Defendant's fraud relating to the denials when the Defendant sent each Plaintiff the 2019 Letters. Amended Complaint ¶¶ 49, 51; 2019 Jackson Letter; 2019 Reyes Letter.

5

The Plaintiffs allege the following causes of action against the Defendant: (1) fraudulent misrepresentation ("Count I"); (2) unjust enrichment ("Count II"); (3) declaratory judgment ("Count III"); and (4) violation of New York General Business Law Section 349 ("Count IV"). *See* Amended Complaint. In Count I of the Amended Complaint, the Plaintiffs assert that Wells Fargo fraudulently misrepresented that they would be offered permanent loan modifications if the Plaintiffs successfully made all required TPP Payments. *See id.* ¶¶ 112–21. The Plaintiffs note that the Defendant never explicitly stated that a permanent loan modification was contingent upon the Defendant obtaining agreement from third parties to subordinate any existing liens on their properties. *Id.* ¶¶ 113–15. The Plaintiffs assert that not only did the Defendant fail to obtain an agreement to subordinate the existing liens, but also that the Defendant implied in the Denial Letters that it was the Plaintiffs' responsibility to ensure that the modified mortgage retained its priority over the existing liens. *Id.* ¶ 37.

The Plaintiffs further allege that the Defendant's actions were part of a scheme to extract additional payments from its customers. *Id.* ¶ 119. These payments, the Plaintiffs contend, would never have been made if the Plaintiffs were aware of the requirement that existing liens be subordinated, and that the loan modification would be denied if an agreement to subordinate existing liens could not be accomplished. *Id.* ¶¶ 118, 120. The Plaintiffs also contend that the Defendant knew that no one seeking to preserve their home would agree to a TPP when forewarned that there was a possibility that the existing lienholders might not agree to subordinate their liens to Wells Fargo's security interest, thus scuttling the permanent loan modification. *Id.* ¶ 114. The Plaintiffs argue that knowledge of this potential outcome was a material fact that was not disclosed and would have led Plaintiffs to not engage in the TPP process. *Id.* ¶¶ 115–16.

6

In Count II of the Amended Complaint alleging unjust enrichment, the Plaintiffs assert that the Defendant's behavior created an inequitable situation where Wells Fargo unjustly obtained additional payments from its customers that otherwise would not have been submitted. *See id.* ¶¶ 123–29. The Plaintiffs contend that Wells Fargo's customers would not have entered into a TPP if the permanent modifications were not guaranteed. *Id.* ¶ 114. In Count III of the Amended Complaint, the Plaintiffs seek a declaratory judgment under 28 U.S.C. §§ 2201 *et. seq*. *See id.* ¶¶ 131–44. As a result of making the TPP Payments, the collectability of the Plaintiffs' mortgage debt is reset to the date of their last TPP Payment. *Id.* ¶ 140. The Plaintiffs seek to have the Court declare that the collectability of their debt is reset to accrue as if the Plaintiffs did not make TPP Payments. *Id.* ¶ 141. In Count IV of the Amended Complaint, the Plaintiffs allege that the Defendant's actions violated N.Y. Gen. Bus. Law § 349, which makes it unlawful for a business to deceptively market and sell consumer goods in New York State including—Plaintiffs contend—loan modifications. *See id.* ¶¶ 146–63.

In its Motion, the Defendant argues that all the Plaintiffs' claims are untimely. *See* Motion at 6. The Defendant notes that the relevant statute of limitations is a maximum of six years for any of the Plaintiffs' four counts. *Id.* The Defendant argues that the Plaintiffs' claims accrued on July 3, 2012 for Reyes and February 15, 2013 for Jackson—the dates of the respective Denial Letters—triggering the statute of limitations. *Id.* As this adversary proceeding was not filed until April 12, 2019, the Defendant argues that the statute of limitations on all of Plaintiffs' claims has elapsed. *Id.* In the alternative, the Defendant argues that dismissal is appropriate because each of the claims fails to state a claim that is cognizable under applicable law. *See id.* at 1–2.

In response to the Motion, the Plaintiffs argue that the statute of limitations should be tolled under New York's discovery rule or, in the alternative, that the Defendant should be equitably estopped from asserting a statute of limitations defense because of its purported concealment of its fraudulent activities. *See* Opposition at 9. The Plaintiffs contend that the Defendant's fraud was not discoverable until the Defendant sent each Plaintiff the 2019 Letter. *Id.* The Plaintiffs also contend that all their claims are viable as alleged. *Id.* at 3.

## DISCUSSION

Federal Rule of Civil Procedure 12(b) "provides that a plaintiff's complaint must be dismissed if the complaint fails to state a claim upon which relief can be granted." *Homes v. Ocwen Loan Serv., LLC.*, 2020 Bankr. LEXIS 1962, at *7–8 (Bankr. S.D.N.Y. July 24, 2020). A defendant may raise the affirmative defense of statute of limitations in a motion to dismiss. *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989). A complaint filed after the statute of limitations has expired may be dismissed under Rule 12(b)(6). *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir. 2008).

In analyzing a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, the Court reviews the complaint assuming that all the factual allegations are true. *Id.* Taken as true, these facts must establish "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2007). In reviewing the Defendant's motion, the Court must draw all reasonable inferences in favor of the Plaintiffs. *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000).

**A. Count I for Fraudulent Misrepresentation**

For claims sounding in fraud, federal courts look to state law for the relevant statute of limitations. *See Dowe v. Leeds Brown Law, P.C.*, 419 F. Supp. 3d 748, 761–62 (S.D.N.Y. 2019). In New York State, the statute of limitations for a claim of fraudulent misrepresentation is found in N.Y. C.P.L.R. Section 213(8). *Gutkin v. Siegal*, 926 N.Y.S.2d 485, 486 (N.Y. App. Div. 2011). This section provides that an action based upon fraud generally must be commenced within "six years from the date the cause of action accrued . . . ." *See* N.Y. C.P.L.R. § 213(8), *Saphir Int'l., S.A. v. UBS PaineWebber Inc.*, 807 N.Y.S.2d 58, 59 (N.Y. App. Div. 2006).

To begin the six-year statute of limitations analysis, the Court must first determine the date this claim arose. In this case, the Defendant allegedly promised in the TPP Letters that Plaintiffs would receive loan modifications if they made their trial payments—and nothing else changed in the Plaintiffs' situations—but the Defendant instead denied the requested loan modifications despite the Plaintiffs' TPP Payments. *See* Amended Complaint ¶¶ 28, 33, 35, 46, 73, 96; Opposition at 9. As it is undisputed that the Denial Letters were sent in July 2012 and February 2013 and these actions were filed in April 2019, it appears that the fraud claims are barred under the six-year statute of limitations.

Plaintiffs present two main arguments on the statute of limitations. First, Plaintiffs rely on New York's discovery accrual rule. Opposition at 7. *See also Kaufman v. Cohen*, 760 N.Y.S.2d 157, 166–67 (N.Y. App. Div. 2003) (reviewing New York's version of the discovery accrual rule). In New York, the discovery accrual rule is "two years after the fraud was discovered . . . or could have been discovered by reasonable diligence." *See* N.Y. C.P.L.R. § 213(8). The plaintiff carries "the burden of establishing that the fraud could not have been discovered prior to the two-year period before the commencement of the action." *Cannariato v.*

*Cannariato*, 24 N.Y.S.3d 214, 216 (N.Y. App. Div. 2016). But a plaintiff cannot claim ignorance to a fraud when facts call for investigation. *Aozora Bank Ltd. v. Deutsche Bank Sec. Inc.*, 29 N.Y.S.3d 10, 14 (N.Y. App. Div. 2016). In such a case, the plaintiff has a duty of inquiry. *Id.* New York courts use an objective test to determine whether a fraud could have been discovered through reasonable diligence by an individual with ordinary intelligence. *CSAM Capital Inc. v. Lauder*, 885 N.Y.S.2d 473, 478 (N.Y. App. Div. 2009); *Gutkin*, 926 N.Y.S.2d at 486. Under the reasonable diligence inquiry, a plaintiff will be held to have discovered the fraud when the plaintiff has knowledge of an injury and the source of the injury from which the fraud could be reasonably inferred. *MBI Int'l Holdings Inc. v. Barclays Bank PLC*, 57 N.Y.S.3d 119, 124 (N.Y. App. Div. 2017); *See Rotella v. Wood*, 528 U.S. 549, 555–56 (2000); *U.S. v. Kubrick*, 444 U.S. 111, 122 (1979) ("The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury . . . . There are others who can tell him if he has been wronged, and he need only ask."). When a plaintiff does not perform reasonable diligence that could have discovered the fraud, courts will impute to the plaintiff knowledge of the fraud as of the date of the injury. *MBI Int'l Holdings*, 57 N.Y.S.3d at 125; *L.C. Capital Partners, L.P. v. Frontier Ins. Grp.*, 318 F.3d 148, 154 (2d Cir. 2003).

The Plaintiffs here contend that they could only have discovered the alleged fraudulent misrepresentation when the Defendant sent the Plaintiffs the 2019 Letters. Opposition at 9. But the Court disagrees. The Plaintiffs' entire case is premised on the notion that the TPP Letters essentially guaranteed them a loan modification if the Plaintiffs honored their obligations, including most notably making the trial payments. *See* Amended Complaint ¶¶ 28, 46, 73, 96. Under Plaintiffs' own theory, therefore, Plaintiffs would have to know something was amiss when they received the Denial Letters despite having held up their end of the bargain. Plaintiffs

argue that the Denial Letters concealed the Defendant's fraudulent misrepresentation. Opposition at 11. But once again, the Court disagrees. Rather than concealing the alleged fraud, the Denial Letters highlighted that something was amiss. *See MBI Int'l Holdings*, 57 N.Y.S.3d at 124 (N.Y. App. Div. 2017) ("Plaintiffs' own allegations, which we must accept as true on a motion to dismiss, establish that plaintiffs were apprised of facts from which fraud could have been reasonably inferred."); *World Wrestling Entm't Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 526 (S.D.N.Y. 2007) ("From [p]laintiff's own, detailed allegations, the Court has little difficulty in finding that a reasonable person would have been on inquiry notice."); see also *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 155–56 (2d Cir. 2012) ("[I]t is proper under New York law to dismiss a fraud claim on a motion to dismiss pursuant to the two-year discovery rule when the alleged facts do establish that a duty of inquiry existed and that an inquiry was not pursued.").

In contending that they were not on inquiry notice until 2019, Plaintiffs cite to *Kaufman*, 760 N.Y.S.2d 157 (N.Y. App. Div. 2003). Opposition at 12–13. In *Kaufman*, the defendant withheld from his partners that the true reason he allowed a co-owned building to go into foreclosure was so that he could purchase the building, outside the partnership, at a significant discount. 760 N.Y.S.2d at 163. The trial court in *Kaufman* held that the co-owners were placed on inquiry notice by a letter highlighting that the defendant's daughter was employed by the new purchasers as part of the management of the building. *Id.* But the appellate court disagreed, finding that these facts were not sufficient to put the plaintiffs on inquiry notice. *Id.* at 168. The appellate court noted that both the plaintiff and his daughter were previously involved in the day-to-day management of the building and, therefore, "it was not unusual that [the plaintiff or plaintiff's daughter] would have remained involved." *Id.* (noting that the situation was consistent with reasonable expectations under the circumstances).

11

This case is distinguishable from *Kaufman*. Plaintiffs argue that the Denial Letters did not mention that Wells Fargo required an agreement from lienholders to subordinate their liens and, thus, that the Denial Letters "were reasonably interpreted by the Plaintiffs as being entirely consistent with their previous understanding of the Loan Modification Process." *See* Opposition at 12–13. But this contention flies in the face of Plaintiffs' own complaint. Plaintiffs' central tenant is that the TPP Letters caused the Plaintiffs to believe that permanent loan modifications were a "mere certainty." *Id.* at 5. Under such circumstances, it is impossible to conclude that Plaintiffs could have interpreted the Denial Letters as an expected event consistent with their understanding. Indeed, at oral argument held on September 10, 2020, Plaintiffs' counsel rightly conceded that the Plaintiffs were on notice that something was amiss upon receiving the Denial Letters.

For the same reason, Plaintiffs are mistaken in relying on *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274 (S.D.N.Y. 2013). *See* Opposition at 13. In *De Sole*, the plaintiffs purchased paintings in an art gallery that turned out to be forgeries. 974 F. Supp. 2d at 293. The defendants argued that forensic analysis, if employed by the plaintiffs at the time of the sale, would have revealed the forgery, and therefore the discovery accrual rule should run from the date of sale. *Id.* at 296–97. The court in *De Sole* disagreed, concluding that the plaintiffs at the time of the sale "had no reason to suspect the authenticity of their painting." *Id.* at 297. By contrast, the Denial Letters here told Plaintiffs that they were not going to receive a loan modification despite purportedly being promised one in the TPP Letters. Once they received the Denial Letters, therefore, Plaintiffs had reason to suspect that Defendant's prior promise of a permanent loan modification was false. The Plaintiffs cannot simultaneously argue that they

12

were essentially guaranteed a loan modification and then maintain they were lulled into inaction when they were denied that same loan modification.

Plaintiffs also contend that their time to file a complaint should be tolled until they learned of the nature of their cause of action through the 2019 Letters. Opposition at 9 ("Plaintiffs did not become aware of any potential claims against Defendant until they received their [2019 Letters], which renders their claims timely."). That is to say, the Plaintiffs contend that they needed to know the basis of their claim against the Defendant—that a "subordination process" existed that was material to the Plaintiffs' decision making—and that this fact only became clear with the 2019 Letters. *Id.* But it is well established that the standard for inquiry notice under the discovery accrual rule is notice of the injury, not notice of the claim. *Rotella*, 528 U.S. at 555 ("[I]n applying a discovery accrual rule, we have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock."); *see Zumpano v. Quinn*, 849 N.E.2d 926, 929 (N.Y. 2006) ("Plaintiffs' proposed rule would revive any lapsed claim where the defendant inflicted some type of injury upon a knowing plaintiff but failed to come forward with further information about his or her wrongdoing."). Thus, all that was necessary was for Plaintiffs to learn of their denial—despite the Defendant's purported earlier promise of a loan modification—and not the exact reason for the Defendant's apparent change of heart.

Plaintiffs also argue that reasonable diligence would not have discovered the alleged fraudulent misrepresentation because inquiry here was futile. Opposition at 14. Plaintiffs speculate that Defendant would have given them false assurances about their eligibility for a loan modification if they inquired. *Id.* But the key fact is that the Plaintiffs never did inquire. *See Koch*, 699 F.3d at 152–53. The Court cannot speculate on what Defendant's response might

13

have been to such an inquiry and whether it would have provided a basis for tolling the statute of limitations here. *Id.*; *see Ward v. N.Y. Univ.*, 2000 U.S. Dist. LEXIS 14067, at *16 (S.D.N.Y. Sept. 25, 2000) (refusing to speculate on a motion for judgment on the pleadings where the plaintiff made only "bald assertions and conclusory allegations" that the defendant University failed to follow its own rules and procedures). In the face of such inaction, the law is clear that the Plaintiffs are charged with knowledge of the fraud. *L.C. Capital Partners*, 318 F.3d at 154 (noting that if a party makes no inquiry into the injury, the party will have been held to have knowledge of the fraud per the date of the injury).

The Plaintiffs' second argument is based on equity. Opposition at 7. More specifically, they argue that tolling of the statute of limitations under New York law is appropriate when a defendant actively prevented the filing of a timely claim.[3] *Kaufman*, 760 N.Y.S.2d at 167; *Dowe*, 419 F. Supp. 3d at 761 (courts will apply equity to prevent a defendant from benefiting from wrongdoing that causes a plaintiff to delay bringing the cause of action). Under this equitable theory, a plaintiff must demonstrate: (1) the defendant utilized fraud, misrepresentations, or deception to induce a plaintiff to refrain from filing a timely action; and (2) the plaintiff "reasonably relied on the defendant's misrepresentations." *MBI Int'l Holdings*, 57 N.Y.S.3d at 126.

In support of this argument, the Plaintiffs cite *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318 (2d Cir. 2004). Opposition at 8. In *Veltri*, a multi-employer pension fund denied

---

[3] There are two separate but similar doctrines of equitable tolling and equitable estoppel. *See In re Signature Apparel Grp.*, 577 B.R. 54, 83 (Bankr. S.D.N.Y. 2017) (defining the difference while noting that some courts use these terms interchangeably); *see also Pearl v. City of Long Beach*, 296 F.3d. 76, 82 (2d Cir. 2002) (noting that generally New York courts refer to both doctrines as equitable estoppel). "Equitable tolling occurs where the defendant conceals from the plaintiff the fact that he has a cause of action." *In re Signature Apparel Grp.*, 577 B.R. at 83 (internal quotations omitted). "Under the concept of equitable estoppel, a defendant may be estopped from pleading the Statute of Limitations where, inter alia, a plaintiff was induced by fraud, misrepresentation or deception to refrain from timely commencing an action." *Id.* (internal quotations omitted).

14

an applicant's request to recalculate his pension benefits based on service that included two distinct employment periods separated by several years. *Id.* at 321–22. In this denial, the fund neither informed the applicant of his legal right to appeal the denial nor replied to the applicant's repeated further inquiries. *Id.* at 323. The court in *Veltri* found that it would be inequitable to allow the fund to hide the right to appeal from the employee—despite being legally required to inform the employee—and then assert a statute of limitations defense when the employee failed to act timely. *Id.* But we have no such facts here. Rather than hide the Plaintiffs' right to challenge the Defendant's decision as in *Veltri*, the Defendant here did the opposite. Both Denial Letters emphasized in bold type—"If you believe the loss mitigation request has been wrongly denied, you may file a complaint with the New York State Banking Department at 1-877-BANK-NYS or www.banking.state.ny.us."[4] *See* Jackson Denial Letter; Reyes Denial Letter. And as explained above, the Denial Letters did not lull the Plaintiffs to sleep as to their rights; they alerted the Plaintiffs of their injury.

The Plaintiffs' equitable argument also fails for an entirely separate reason. It is well established that, for purposes of this equitable theory, the defendant's actions that allegedly induced a plaintiff to delay legal action must be subsequent to and different from the defendant's actions that define the claim. *Zumpano*, 849 N.E.2d at 929; *see also Corsello v. Verizon N.Y., Inc.*, 976 N.E.2d 1177, 1184 (N.Y. 2012) (finding that the plaintiffs did not aver "an act of deception, separate from the ones for which they sue, on which an equitable estoppel could be based"). The Defendant's issuance of the Denial Letters is the action that defines the Plaintiffs' misrepresentation claim; without the denial of the loan modification, there is no claim. *See* Amended Complaint ¶ 35 (describing that the Plaintiffs were informed that they had been

---

[4] Plaintiffs do not contend that they availed themselves of the resources of the New York State Banking Department in response to receiving the Denial Letters.

rejected for a permanent loan modification). Thus, the Plaintiffs cannot also argue that the same Denial Letters induced them into delaying legal action. *See id.* ¶ 42 (noting that Defendant "actively concealed" the fraud through the Denial Letters); *see also Kaufman*, 760 N.Y.S.2d at 167 (noting that to allow the same action to form the basis of the claim and tolling would "always trigger equitable estoppel and render the discovery accrual rule for fraud actions superfluous").

## B. The Remaining Counts

For related reasons, the Plaintiffs' three remaining causes of action must also be dismissed. Like the fraudulent misrepresentation count above, the Plaintiffs' second count for unjust enrichment is outside the applicable statute of limitations. In New York, a cause of action for unjust enrichment has a statute of limitations period of six years. *Yarbro v. Wells Fargo Bank N.A.*, 33 N.Y.S.3d. 727, 728 (N.Y. App. Div. 2016) (citing N.Y. C.P.L.R. § 213(1)). For unjust enrichment, the statute of limitations accrues from the time of the alleged wrongful act that led to the claim. *Id.* The statute does not provide for a similar discovery accrual rule as an action sounding in fraud. *See* N.Y. C.P.L.R. § 213(1). As the alleged wrongful act leading to the claim was the Defendant's retention of the Plaintiffs' TPP payments notwithstanding the issuance of the Denial Letters, the Plaintiffs are time-barred from pleading a claim of unjust enrichment.

The Court also finds that the Plaintiffs' fourth count under N.Y. Gen. Bus. Law § 349 is outside the statute of limitations. In New York, the statute of limitations for Section 349 is controlled by N.Y. C.P.L.R. § 214(2) and is three years. *Gaidon v. Guardian Life Ins. Co. of Am.*, 750 N.E.2d 1078, 1082–83 (N.Y. 2001) (differentiating the statute of limitations for N.Y. Gen. Bus. Law § 349 from the statute of limitations for common law fraud controlled by N.Y.

16

C.P.L.R. § 213(8)).  Claims under Section 349 accrue as of the date of the injury caused by the deceptive practices.  *Id.* at 1083.  As established in the fraudulent misrepresentation count, the Plaintiffs' alleged injury occurred with the Denial Letters, which was the completion of the alleged deception and took place over six years prior to the filing of this adversary proceeding.  This claim must be dismissed as time barred consistent with the Court's rulings above.

Finally, the Court dismisses the Plaintiffs' request for declaratory judgment.  A declaratory judgment is a procedural device that is used to vindicate substantive rights.  *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992).  As such, the statute of limitations on a request for declaratory judgment matches that of the underlying substantive right being litigated.  *Lehman Bros. v. Giddens (In re Lehman Bros.)*, 617 B.R. 231, 244 (Bankr. S.D.N.Y. 2020).  Given the Court's dismissal of the Plaintiffs' underlying substantive claims, the request for declaratory judgment must also be dismissed as time barred.[5]

---

[5] Having found that each of the Plaintiffs' claims are barred by the applicable statute of limitations, the Court declines to rule on the Defendant's motion to dismiss for failure to state a claim.

## CONCLUSION

For the reasons set forth above, the Court grants the Defendant's motion to dismiss in its entirety. The Defendant shall settle an order on three days' notice. The proposed order must be submitted by filing a notice of the proposed order on the Case Management/Electronic Case Filing docket, with a copy of the proposed order attached as an exhibit to the notice. A copy of the notice and proposed order shall also be served upon opposing counsel.

Dated: White Plains, New York
      April 20, 2021

                                          */s/ Sean H. Lane*
                                      UNITED STATES BANKRUPTCY JUDGE